We are scheduled for three argued cases this morning. The first case before the court is docket number 151564, Triple T Golf, Inc. v. Taylor Made Golf Company. It is a case from the Southern District of California, a judgment by the District Court. Ms. Tadros, did I pronounce that correctly? You want to save three minutes for rebuttal? Yes, Your Honor. Okay, you may begin. Thank you, Your Honor. May it please the Court. The District Court erred in finding that the scope of Claim 9 of the 660 patent was substantively changed during the ex parte reexamination. The District Court erred on two grounds. First, the District Court erred in determining that the weighting elements of Claim 9 were not adjustable. Second, the District Court incorrectly determined that the reexamined claim recited a different path for the weighting strategy. Let me ask you about the new Claim 9. I understand that everyone is in agreement that the new Claim, Claim 20, does require adjustability. Correct. And when you say that the District Court said that the original Claim 9 wasn't adjustable, didn't the District Court simply say it didn't require adjustability? It said that the claim basically did not recite adjustability. Well, it's a comprising claim, correct? Correct, Your Honor. So isn't the answer really that the claim could be adjustable but it didn't have to be adjustable? That's the problem, Your Honor, is that if it's being read that way, it's being read opposite to what the specification says because the specification requires adjustability of the weighting elements. Without adjustability of the weighting elements, the invention doesn't operate the way it's supposed to. So if you're reading it that way, it controverts the actual intent of the invention. Everything about the invention says that the weighting elements are adjustable. They have to be adjustable in order to operate the golf club. What does the specification say that it requires adjustability? I like which column and which line. I beg your pardon? Which column and which line of the specification? It's not, Your Honor, it's not specifically in a particular column. It's throughout the entire specification. If I may point to some areas. Right, right. But I thought you said that the specification makes clear that adjustability is required. Yes, it does. So what I'm looking for is where in the specification, what do you rely on the specification to support that statement? There are a few sections. Let me highlight a few of them for you. One of the sections we rely on is appendix 241, column 3, beginning at line 10. One of the things we'd like to highlight is it is a further object. Which column was that? Column 3, appendix 241. And which line? Beginning at line 10. Line 10. The specification reads, it is a further object to provide a golf club head modified with a hollow interior and having a selectable point access vector distributed linear or nonlinear weights, which may be inserted or removed to suit particular preferences, needs, and physiological requirements of a golfer. I just note here that the interior- That could be done by the manufacturer, right? I beg your pardon? That could be done by the manufacturer. That's the problem, Your Honor. It says a hollow interior. The hollow interior, that you can't have a hollow interior and fixed weights within that hollow interior. If the interior is hollow, the weights can't be fixed at the point of manufacturer design. That specifically contradicts a hollow interior. You can't have a hollow interior and then weights that are fixed at the point of manufacturer design. I don't understand that. You start with a hollow interior when you're manufacturing the club, right? Yes, but- And somebody's got to- At some stage in the game, these various weights have to be fixed, otherwise they'll just flop around and they won't do any good. You're right, Your Honor. They are fixed by the user. The user will fix them. They will attach them or detach them using snap-on or clip-on weights. Before your shot, you will take your weight. You will put it wherever you want to put it with a snap-on or clip-on weight. Then take your shot. If you're happy with your shot, you can stay with that. If the next time, at the next- But you could have weighted clubs that a manufacturer prepares, and the golfer themselves can't afterward adjust it, right? I assume you could, yes. I mean, I think that's- And isn't that- I mean, you have a little bit of a problem here. I'm not sure why there was no argument on this, but you've got a claim differentiation problem. I mean, original Claim 9 incorporated original Claim 1, right? Correct. And then dependent from Claim 1 are Claims 2, 3, 4, 5, and Claims 2, 3, 4, all the way up to 6 require golfer-replaceable elements. So if a dependent claim requires a golfer-replaceable element, then why should we conclude that the independent claim already had that requirement? Because the only reason is because that's the only thing that's disclosed in the specification. So if there's any type of ambiguity, if there's any type of question as to, you know, and there's nothing in the specification that would- Well, we should ignore claims that say things like the method as recited in Claim 1, in which said weighting means comprises golfer-replaceable elements. And that's a very distinct dependent claim, is it not? Which claim are you reading from? I'm looking at Claim 3, Claim 4, Claim 6. Those claims clearly seem to say that the golfer has to be able to make these adjustments. Yes, Your Honor. So if the dependent claim, which is narrower than the independent claim, requires golfer-made adjustments, the presiding judge was asking you why wouldn't you look at the independent claim to assume that it doesn't have that limitation? There may be some ambiguity there, Your Honor, perhaps. But again, we just rely on Phillips, which says that basically that you cannot construe the claims to claim anything that isn't the invention. And the invention, and Your Honor, Judge Cleaver had asked about the Covinger, Edgar Barton, about the weighting elements, and I just wanted to refer to the section Pages 14 to 17 of Appellant's Main Brief, which cite to Appendix A227, A240, Columns 1, Lines 64 to Column 2, Lines 67, Appendix 241, Column 3, Lines 11 to 20, Appendix 241, Column 4, Lines 48 to 54. I mean, over and over throughout the specification, the only type of golf club that is disclosed and taught is a golf club in which the weighting elements are movable. Well, there are many references in the specification in the word part that talk about the golfer being able to make these changes. Correct. So no one was denying that. I think the line of questioning that the presiding judge asked you about is to say yes, the claims are drawn in such a way that if a golfer made adjustments, you could sue him for infringement. But the question was, why couldn't you also sue a manufacturer who made the adjustments themselves and sold the club with fixed weights? Your argument is that the word selectively in subsection C of Claim 1, selectively employing, you're saying that has to mean selected by the golfer, not by the manufacturer. You're right, Your Honor. That's what we're saying. We're saying that everything about this means that it has to be selected by the golfer. But even if you're right, correct, on that, there's an alternative ground on which you lost below, which is the specific amendment you made, right, which was not inherent in the original claim. That's what the trial court found. Right. But, I mean, so don't you have to address, even if you prevail on the first point, you've got to prevail on the second point as well. Correct, yes. And if you'd like, I'll address that issue. Why is it that Figure 5 teaches that the limitation that you added is inherent in the original claim? Well, Your Honor, we don't believe that we added a limitation. We believe we clarified the prior language. Right, but isn't your argument that your inherency argument hinges on Figure 5? No, Your Honor. Figure 5 is one illustration of a possible weighting strategy. I'd like to refer your attention, if I may, to page 14 of Appellant's reply brief. Before you go there, I just want to make sure I understand the way this system works that you've described in the second part of the case. And I guess let me do it this way by asking, if you had, using your 3 by 3 by 3 matrix, if you had fixed the x and you moved the y from y2 to y1 but moved the z from z1 to z3, so you've moved up two steps on the z and down one on the y, you could get an increase in backspin, or I guess it would be a decrease in backspin in any event. Why wouldn't that satisfy Claim 9 but not satisfy Claim 20? Your Honor, I'm going to have to refer to the diagram while you ask that question. I apologize. You understand what I'm saying. In other words, I'm saying you increase the z by more than you decrease the y, but nonetheless you decrease the y. So you have offsetting effects on the backspin, but the z increase overshadows the y decrease. That would be something that would not satisfy Claim 20, it seems to me, but why doesn't it satisfy Claim 9? Because it's outside of the allowable zone. Well, that doesn't help me much to just say it's outside of the allowable zone. What in the claim language says that that's not something, in the claim language of Claim 9 that says that's not permissible? No, it's not permissible under Claim 20. Well, the claim language, the limitation is at the very beginning where it says that to modify backspin, you have to provide the weighting elements between the low y, low z, and the high y, high z. So right there, you've defined your scope. So that is the same language in both Claim 9 and the new claim, Claim 20. And right there with just that language, you don't need to go any further. You've defined the allowable scope. You said that the weighting strategy must occur between the low y, low z, and the high y, high z. But you're reading between to mean, to reference as if it referred to movement between one coordinate and another. It seems to me that that language is at least equally, perhaps even more, amenable to a reading that you're talking about the void space weighting means between, referring to the space, between low y, low z, and high y, high z, not the actual movement along the axis that you're talking about, which would require that you go from y1, z1, to y3, z3, right? Well, the way it's supposed to be is that you can move it anywhere from that y1, z1 to the y3, z3, and between that. So depending on what kind of shot you want to affect, depending on whether you want minimum backspin or maximum backspin or a more neutral type position, you would put your weighting elements either in the more neutral, which is the middle layers, or if you want a maximum backspin, I believe the maximum backspin is at the lower, the lower y1 and z1, and the minimum backspin would be the y3, z3. So before your shot, if you feel like you want a minimum backspin, you would move those weights to the y3, z3 coordinates. Out of curiosity, how do you move, when you're out on a golf course, you're getting ready and you say, I need a little bit more backspin here. How do you open up the club to make the adjustments? Aren't the weights inside the cavity? No, you have the weights. You carry the weights. The weights are separate. You stick them on with glue? You stick them on with clip-on or snap-on weights. And you clamp them on, what, on the back of the club? There may be little hooks inside, or you can have a little snap-on attachment. They go on the outside of the head? No, it's inside the void space. So this is a club which has no back, in effect, right? Well, I believe it does have a back, Your Honor, but the void space is not... How do you get at the void, at the inside? I haven't seen an actual club, but I think you would just close it. You have the top. It's the void space that's the invention. So it's the matrix, the volumetric matrix. You have your club head, and inside the club head, you might have clips or hooks. And then the weights are separate. And the weights can come in. They've got propeller shapes, or they've got linear or nonlinear-type weights. So you can have something that's like a horseshoe, or you can have a propeller that would go against, that would enter various coordinates. But how you attach it is either a snap-on or a clip-on. There may be other ways. It's not limited to those ways. Perhaps there's a more effective way, like a Velcro, but we've disclosed snap-on and clip-on. All right. You're out of time. I'll restore your three minutes for rebuttal, and we'll give the other side three extra minutes if it's necessary. Thank you, Your Honor. Good morning, Your Honor. The plain language of Claim 9 makes clear that it does not require the weighting means to be adjustable. The claim simply recited providing a weighting means between a low Y, low Z coordinate and a high Y, high Z coordinate. The district court did not limit Claim 9 to one that has fixed weights. It doesn't require, but it does permit. It does permit. That's correct. So you can have a golf club that has golfer-adjustable weights, that a golfer could reposition and adjust as they're using it, or you can have a golf club that were in the manufacturer, manufactured the club to have either thickened walls as weights. What's your response to the presiding judge's claim differentiation argument? I think that's exactly correct. Why didn't you make it? In hindsight, we should have made it. We thought the claim language was so clear that we didn't need to go to the claim differentiation argument. There's nothing in Claim 9 that would lead a person of ordinary skill in the art to believe that it requires the weighting means to be adjustable. Well, if you've got a written description that talks about only adjustable mechanisms, then you could read that into the plain language, could you not? Here, I don't think the specification, while it discusses adjustable weights, doesn't limit it to adjustable weights. It talks at many points about the golfer making the changes. That's correct, but there's several embodiments. For example, figures 14 and 15, which show weights that don't appear to have the ability for a golfer to adjust those. There's no discussion in the patent specification whatsoever of how they're attached to the club. I think the plaintiff's counsel said hooks or clips, but there's no such discussion of that in the patent spec. There's no discussion of how a user would move or adjust those weights. Why don't the figures in 14 and 15 suggest that those are golfer placed, the horseshoe and the little triangle are put there by the golfer? The club is an odd club with a hollow space with no back end on the club. So you just carry along that little horseshoe and you clip it in. That could be the case, but the patent specification doesn't say that. You were saying that 14 and 15 are proof that they're fixed. Well, I think they appear to be fixed. There's no discussion of being able to move those weights. Who fixed them, the golfer or the manufacturer? I would presume the manufacturer here. In the detailed description, the drawings only carry so much weight, or virtually none actually, but in the detailed description of these drawings, it doesn't say that they're fixed. It doesn't say that they're movable either. What's the best evidence that you can point to from the specification that they can be fixed? Well, I think if you look in the summary, I think there's several. One is the embodiments that don't actually disclose that the weights are movable. And two, in the specification, in the summary of the invention at A241, column 3, it talks about the weights could be, and I think in line 8, could have an additional integral weights, integral or added weights. And I think they're understanding that sometimes the manufacturer will include weights, and a lot of times what they do is they thicken the walls of the golf club, so that in effect it is a weight. But then they also have separate attachable adjustable weights. What line was that? Column 3, line 8, it talks about further providing a modifiable soleplate with or without additional integral or added weights. So integral being the ones that are sort of fixed and maybe a part of the club head at the manufacturer level or added weights. If you were a manufacturer who put weights in here and they were fixed, I could see you arguing that, in fact, all of this language that talks about the object of the invention, where every single time it talks about modifiable weights, I could see you arguing that this has to be golfer adjustable. Even if you said that this is limited to golfer adjustable weights, it doesn't change the outcome. As your Honor correctly stated with plaintiff's counsel, the added language to Claim 20 further restricts the path of adjustment. It says that as the Z increases, Y cannot decrease. So Y must either increase or stay the same. There's no such language in Claim 9. That was an added limitation, and the patent owner added that limitation. The argument below was that that particular specific limitation that was added in the re-exam was inherent in the original Claim 9, and that was simply done to clarify that it was there. And their sole support for that are a few attorney-derived illustrations of a Rubik's Cube and references to what are the allowed and forbidden weights that are nowhere in the patent specification, nor do they have any, could you read the specification and define what they're trying to define as what it means to be between a low Y. Well, I think they're making a textual argument here based on the language of Claim 9, as I understand it. And I think that your opposing counsel gave this response when I asked. So I'd like you to address it. The textual argument is from, this is actually Claim 1C1, that to modify backspin providing within said void space waiting means between a low Y, low Z coordinate to increase backspin to a high Y, high Z coordinate to decrease backspin is a description of the path that must be followed. Your argument, I take it, is that's not a description of the path that must be followed because that would suggest that it has to be going from low Y, low Z up to high Y, high Z and therefore it can't depart from that path by having any decreasing Y component. Explain to me your reading of this language and why you think the plaintiff's reading of the language is wrong. Well, there's nothing in the patent that says when you go from a low Y, low Z to a high Y, high Z that you have to take a straight line or it's a direct path between the two. In fact, there's nothing in the specification that actually defines what that means. And their argument relies on an interpretation in which the weights are... Let me stop you right there if I could. I gave an example of something that would be a decreasing Y with an increasing Z and it would result in having the same effect on the backspin as going from low Y, low Z to high Y, high Z although perhaps less in total amount of effect on backspin. Is it your view that my description of the path from Y2 to Y1 along with Z1 to Z3 would fall within the scope of the original Claim 9 or not? Yes, that's correct. And that goes with the argument that the claim recites that you're putting a weight between a low Y, low Z to a high Z to affect a change on backspin. Between as opposed to along the path between is what you're saying. In other words, as long as you are somewhere in the range between these two things, you say it doesn't matter what path you follow. They're saying, yes, the low Z, low Y and high Z, high Y has to follow a particular path between the first and the second of those, correct? That's correct. And they're not pointing to anything in the claim that says you have to follow that specific path or anything in the specification. They're relying on attorney-derived arguments and 3D illustrations of a Rubik's Cube that they did not present to the District Court. They've never made these arguments and the two re-exam proceedings we've involved in this patent. They've just now presented this argument for the first time on appeal. And there's no support for that in the specification. The claim simply recites placing a weight between a low Y, low Z and a high Y, high Z. It's like saying you're going to drive from Los Angeles to D.C. What constitutes a city between those two cities? Is Las Vegas between them, but Dallas isn't? I think what we're saying basically that language means it's just about anywhere within a club head. They may have meant something else, but they didn't use claim terminology that gets them to where they want to be. Do you believe that the original Claim 9 required the 3x3x3 matrix? I think that is a sort of schematic way of mapping that they can say where they want the weight locations to be. I think that was supported by the specification if they wanted to limit that in that way in the re-examination which they did. I'm not sure that adds a limitation. It just gives you context of where the weighting locations would be. I don't understand how the 3x3x3 matrix works in the real world. Presumably you have these little cubes of space, abstract cubes. Presumably you could move a weight some degree between one place and another within this matrix, and it wouldn't leave one of the little cubes. Or it could move from somewhere close to the line between two of them and move up a little. What does the 1, 2, 3 contribute? We're not suggesting that there can only be one location for the weight in each of the little cubes, are we? In each cell, I guess is what we call them. I think Plano's argument is actually taking that interpretation. When they're trying to construe between a low y, low z and a high y, high z, their argument implies that the weight has to be the same size and shape as the cell of a coordinate system. But that can't be because the pictures, if they do nothing else, they show us things that are not the same size and shape and location as these cells, right? That's exactly correct. I think they show a horseshoe, they show a triangle, they show some linear language. Their interpretation also requires the weighting means to fit entirely within this cell and that it couldn't overlap or span multiple coordinates. Both their embodiments show otherwise. In the reexamination, the examiner held otherwise. I think there's a lot of flaws with their argument. It's not supported by the spec. It's not supported by their own embodiment. The only other thing I'll say is that how we got here was that in reexamination, they were faced with a rejection of the claim based on a prior reference damage in which it has adjustable weights that adjust in the opposite direction as what they've added to the claim. They specifically amended the claim at the examiner's suggestion and got an allowed claim. They never argued that this restricted path, whereas as the Z increases, the Y does not decrease. They never argued that was inherent in the claim. If it was inherent in the claim, they should have argued it to the examiner. Instead, they accepted the examiner's suggestion and added a modified version of that language to their claim. And adding narrowing language to a claim during a reexamination results in the claim not being substantially identical to the original claim. I have nothing further. You have three minutes. Your Honor, please record. Firstly, I would just like to address the issue of the hooks or the clips. That's on page appendix 241, column 4, the descriptions of figures 18 and 20 specifically refer to hooks or clips. So that's one thing. When Appelli says that the sole plate provides for integral or added weights, that's at column 3, line 8. That's the sole plate that's being discussed, not the void space. The other thing I just wanted to mention was Judge Bryson's issue on the path of the weighting strategy. Neither the original claim nor the reexamined claim required an increase in the z-axis. It didn't define one direction. It just defined a zone. And that's what we wanted to try to clarify, is that Appelli tries to say that this is a particular direction. You have to be increasing the z-axis. You don't have to be increasing the z-axis because that language would say in which the z-axis is increasing. That's not a limitation that we have. You don't have to increase the z-axis. The z-axis could be decreasing. The language says in which an increase in the z-axis does not correspond to a decrease in the y-axis. In other words, if you are increasing your z-axis, the y-axis must stay constant or increase. It cannot decrease. You can absolutely go the other way. You're not limited to that one direction. That one direction would mean if the added language said in which the z-axis is increasing. We're not limiting it to that direction. But if you do increase the z-axis, you can't decrease the y-axis. That's correct. And Figure 1 of Dahman, for example, seems to show an increase in z that's accompanied by a decrease in y. In Figure 1? I think it's Figure 1, is it not? Of Dahman? Of Dahman? Mm-hmm. Well, the thing about Dahman is that, and this is the reason the amendment was made. Figure 1 of Dahman is going up in the z and down in the y, as far as I can tell. Is that right? I wasn't really, let's see, where's that figure? Is that A792 that you're referring to? Let me just, I pulled it out. Let me just, A792, yes. A792. I rely, for Dahman, I rely on the language, Your Honor. I rely on the language which says that Dahman teaches that, and I'm reading from A798, lines 17 to 19, in order for the golf club head to be stable, it is also important that the masses on either side of the center of the striking surface, i.e., the sweet spot, is approximately equal. In other words, the teaching of Dahman was that as the z-axis increases, the y-axis should decrease because you want that stability. And so it was brought to the attention of the examiner that it would be helpful, you know, that this teaches away from the strategy of Claim 9 because Claim 9 teaches that as the z-axis increases, you don't have a corresponding decrease in the y-axis. The y-axis must either increase or stay constant. So that was a distinction. And so this language was added to clarify that that is the way it operates. So in both Claim 9 and Claim 20, you can move in either direction. You don't have to increase the z-axis. You don't have to decrease the z-axis. The only thing you have to do is stay within that path. Okay, thank you. Thank you.